**MP, Appellant (Respondent),**

v.

**STATE of Wyoming, in the Interest of the Minor Child, CP, Appellee (Petitioner).**

No. C–97–5.

Supreme Court of Wyoming.

Oct. 8, 1998.

Edward G. Luhm of Scott, Shelledy and Luhm, P.C., Worland, for Appellant (Respondent).

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; Dan S. Wilde, Assistant Attorney General; and Donna A. Murray, Special Assistant Attorney General, Cheyenne, for Appellee (Petitioner).

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

TAYLOR, Justice.

Appellant claims insufficient evidence exists to support the determination of the district court, sitting as a juvenile court, that her child, C.P., was neglected. Finding ample evidence of neglect, we affirm.

## I. ISSUE

As stated by appellant, the mother, the issue is:

Whether the District Court erred when it adjudicated CP to be a medically neglected child?

Appellee, the State of Wyoming, states the issue as:

I. Was there sufficient evidence for the district court to determine CP was a medically neglected child?

* Chief Justice at time of expedited conference.

## II. FACTS

On March 28, 1997, C.P. arrived for visitation with his father in such an alarming medical condition that the father almost immediately took the child to the hospital. C.P., who was fifteen months old at the time, was hospitalized in Hot Springs County Hospital for three days with pneumonia. He was discharged to appellant's care on March 31, 1997, but went home with his paternal grandmother, who was his regular babysitter. At the time of discharge, prescriptions for medication ordered by the attending physician were given to appellant, along with verbal instructions on their proper administration.

Appellant did not obtain the prescribed medication. On April 2, 1997, appellant took C.P. to stay with her cousin in Worland, Wyoming, intending to leave C.P. with the cousin for approximately one month. On the morning of April 3, 1997, the cousin contacted the local Department of Family Services (DFS) and requested assistance in dealing with C.P.'s medical condition. A DFS caseworker contacted appellant in Thermopolis, Wyoming and informed her that DFS intended to take C.P. into protective custody if his prescribed medication was not provided to the cousin by 5:00 p.m. that day. The caseworker also told appellant that help was available through DFS if she needed it. Appellant responded that she would be working past 5:00 p.m., but would send her sister to Worland with the medication.

The sister arrived with a sack of over-the-counter medication, but not the prescribed medication. C.P. was taken into the protective custody of DFS and placed in regular foster care. The caseworker took C.P. to his physician, who prescribed an antibiotic for the pneumonia and ointment for a severe diaper rash. On April 4, 1997, a petition alleging neglect was filed in Washakie County, and the juvenile court ordered that C.P. be temporarily placed with his father.

After an adjudicatory hearing, the juvenile court found C.P. to be a neglected child and ordered a predispositional report and home study. DFS' temporary custody of C.P. was continued, as was his temporary placement in

the home of his natural father. A disposition hearing was held following receipt of the predispositional report and home study[1] at which a reunification plan was established. This appeal of the neglect finding followed.

## III. STANDARD OF REVIEW

■ In reviewing a record for sufficient evidence to sustain a finding of neglect, we:

"1. Give considerable deference to the trial court's determination because it has the advantage to judge the demeanor and intelligence of the witnesses;

2. Examine the evidence in the light most favorable to appellee and resolve all conflicts in evidence for appellee;

3. Assume as true the evidence in appellee's favor, disregard entirely appellant's evidence in conflict with appellee's evidence, and give to appellee's evidence every favorable inference that may fairly be drawn."

*In Interest of N.M.*, 794 P.2d 564, 565 (Wyo. 1990) (*quoting Matter of RJP*, 761 P.2d 1000, 1002 (Wyo.1988)).

## IV. DISCUSSION

Wyo. Stat. § 14–6–201(a)(xvi) (Cum.Supp. 1996) defines a neglected child:[2]

"Neglected child" means a child:

(A) Whose custodian has failed or refused to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being * * *;

(B) Who has been abused by the inflicting or causing of physical or mental injury, harm or imminent danger to the physical or mental health or welfare of the child * * * or substantial risk thereof * * *[.]

Appellant argues two bases for reversal of the juvenile court's decision that her child was neglected. First, she argues there was no expert medical evidence to prove C.P. was in imminent danger or at substantial risk of physical injury; and second, she is being punished for poverty despite making diligent efforts to obtain the money for C.P.'s medication from another source.

### A. THE NEED FOR MEDICAL EXPERT TESTIMONY

The thrust of appellant's argument is that evidence of imminent danger or substantial risk of physical injury is necessary to prove neglect; that this proof requires medical evidence in the form of expert testimony and medical documentation; and that, since none was presented, the State failed to prove its case. This argument might have some appeal had C.P. been alleged to be a neglected child as defined by Wyo. Stat. § 14–6–201(a)(xvi)(B). However, the petition alleging neglect quotes subsection (A) of that statute, which requires proof that appellant failed to "provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being." Specifically, the petition alleges appellant left C.P. with a babysitter without providing prescribed medical care.

■ The State's burden of proof in an adjudication of neglect is by a preponderance of the evidence. *See* Wyo. Stat. § 14–6–225(a) (Repl.1994) and *In Interest of N.M.*, 794 P.2d at 565. In this case, the State was required to prove it was more likely than not that appellant had failed to provide her son with medical care necessary for his well being. Expert testimony is permitted where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue * * *." W.R.E. 702. Whether in any given case expert testimony is necessary "depends upon a variety of factors readily apparent only to a trial court, and we

1. The predispositional report and home study indicates that appellant has three other children, all of whom live with their natural fathers. It also expresses the caseworker's concern with appellant's lack of stability in relationships, living arrangements, and employment, and her refusal to take responsibility for C.P.'s medical condition.

2. This section was amended effective July 1, 1997. We look to the statute in effect at the time of the alleged acts. *See Saldana v. State*, 846 P.2d 604, 612 (Wyo.1993) and *Dellapenta v. Dellapenta*, 838 P.2d 1153, 1160 (Wyo.1992).

must depend heavily on its judgment." *Lyden By and Through Lyden v. Winer*, 913 P.2d 451, 455 (Wyo.1996).

 The record is clear that three days after C.P.'s discharge from the hospital for treatment of pneumonia, appellant still had not provided the medication prescribed. The juvenile court was capable of understanding the evidence before it without the aid of expert testimony. A determination that prescription medication is necessary to the well being of a toddler recently discharged from the hospital does not require specialized knowledge.

The State met its burden of proof.

### B. APPELLANT'S INABILITY TO AFFORD THE MEDICATION

 Throughout her testimony at the adjudicatory hearing and in her brief to this court, appellant decries what she perceives as unfair treatment because of her poverty. She asserts that she was unable to afford the prescribed medication and that she made a diligent effort to obtain it over the three days between C.P.'s discharge from the hospital and DFS' intervention. The record does not support either of these contentions.

Appellant testified she had less than $10.00 when C.P. was discharged on March 31, 1997. She claimed to have contacted many people in an effort to borrow enough money to purchase the medication. Since her efforts at borrowing money were unsuccessful, she argues that as of April 3, 1997, she remained financially unable to fill C.P.'s prescription. Appellant ignores her testimony that she "probably" earned around $10.00 per day in tips from her bartending job on March 31st, April 1st, and April 2nd. The permitted, if not mandatory, inference to be drawn from this evidence is that, by April 3rd when DFS was asking her to provide the medication, appellant should have had approximately $40.00 in her possession.

There is nothing in the record to explain why this $40.00 was not enough. Appellant testified she did not know what medication was prescribed, and she had made no effort to learn what it would cost. There is no

evidence of how her money was spent or why it was not used to buy the medication.

 Nor does the record support appellant's claim that she made a diligent effort to provide C.P.'s medication. While appellant may have contacted numerous people seeking to borrow money, she did not contact C.P.'s father nor did she seek help from either the child's physician or the treating hospital. Most significantly, however, appellant did not pursue assistance from DFS, even after the DFS caseworker had told her assistance was available. Rather than demonstrating diligence to provide her son with medication, the record shows that appellant chose not to take advantage of help she knew was available.

The juvenile court did not err in finding C.P. to be a medically neglected child.

## V. CONCLUSION

The only evidence lacking in this record is that needed to support appellant's arguments. There is more than sufficient evidence that C.P. was a medically neglected child, and the juvenile court's finding is affirmed.