2005 WY 52

**In the Interest of CF and DL, minors: FL, Appellant (Respondent),**

v.

**The STATE of Wyoming, Appellee (Petitioner).**

**No. C–04–10.**

Supreme Court of Wyoming.

April 26, 2005.

---

Representing Appellant: Pro se.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Dan Wilde, Senior Assistant Attorney General; and Ellen Rutledge, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT and BURKE, JJ.

HILL, Chief Justice.

[¶ 1]   FL appeals an adjudication that she neglected her two children.  Finding sufficient evidence to support the juvenile court's adjudication, we affirm.

## ISSUES

[¶ 2] In her *pro se* brief, FL posits the following statements as an issue:

That as a mother I was neglectful of my children. That I knew in advance and had knowledge that something would occur or did occur, and did not Remove [sic] my children from the household and so failed to protect my children.

Appellee Carbon County Department of Family Services (Carbon County DFS) restates the issue presented by FL and adds another:

I.  Whether this appeal should be dismissed for appellant's failure to comply with the Wyoming Rules of Appellate Procedure, the Wyoming Rules of Civil Procedure and for failing to provide cogent argument and authority?

II. Whether there was sufficient evidence for the juvenile court to determine, by a preponderance of the evidence, that appellant's activities met the statutory definition of neglect?

## FACTS

[¶ 3] FL is the mother of CF, a girl born January 1, 1999, and DL, a boy born April 25, 2001. FL is married to JL, who is CF's stepfather and DL's biologic father. FL has three older children from a previous relationship. In early 2003, JL confessed to FL that he had been having "inappropriate thoughts" about CF. JL talked to their pastor, who recommended counseling. JL also talked with his mother. After those conversations, JL claimed that the thoughts were "gone." FL took no other actions regarding JL's admission.

[¶ 4] In early November of 2003, Kenneth Meadwell, a friend of JL who was living with the couple at the time, spent the day at the house drinking with JL. FL went to work at about 10:00 p.m. while Meadwell and JL continued to drink alcohol and watch television. JL went back to his bedroom sometime around 11:00 or midnight. When he could not find a cigarette lighter, Meadwell went back to JL's bedroom to see if he had one. When he opened the door to the room, Meadwell observed JL performing oral sex on CF. Shaken, Meadwell went back to the living room, took a stiff drink of whiskey, grabbed a baseball bat, and returned to the bedroom. CF had left the room, and JL was on the phone with FL. JL told FL that Meadwell was going to kill him. He then handed the phone to Meadwell. Meadwell asked FL whether he should kill JL then or wait until she got home. FL told Meadwell to not kill anyone and wait for her to come home. From the context of the conversation, Meadwell believed that FL knew what had happened between JL and CF. Meadwell was so upset by what he had witnessed that after talking with FL, he left the residence and spent the remainder of the night wandering the streets of Rawlins drinking whiskey. He returned to the house shortly after sunrise when FL returned from work. Meadwell informed FL what he had seen. FL replied that she and JL were going to work it out. Meadwell reported the incident to the police in early December.

[¶ 5] On December 15, 2003, the prosecuting attorney for Carbon County filed a Petition alleging that CF and DL were neglected children as defined in Wyo. Stat. Ann. § 14–3–402(a)(xii) (LexisNexis 2003).[1]

1. § 14–3–402. Definitions.

(a) As used in this act:

....

(xii) "Neglected child" means a child:

(A) Whose custodian has failed or refused to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being;

(B) Who has been abused by the inflicting or causing of physical or mental injury, harm or imminent danger to the physical or mental health or welfare of the child, other than by accidental means, including abandonment, excessive or unreasonable corporal punishment, malnutrition or substantial risk thereof by reason of intentional or unintentional neglect, and the commission or allowing the commission of a sexual offense against a child as defined by law:

(I) "Mental injury" means an injury to the psychological capacity or emotional stability of a child as evidenced by an observable or substantial impairment in his ability to function within a normal range of performance and behavior with due regard to his culture;

(II) "Physical injury" means death or any harm to a child including by not limited to disfigurement, impairment of any bodily organ, bleeding, burns, fracture of any bone,

The Petition alleged that JL had committed a sexual offense against CF, and that FL had failed to provide adequate protection of her children.

[¶ 6] At the adjudication hearing, FL disputed Meadwell's account of events. FL acknowledged that she received the phone call from JL at work and that she talked to Meadwell. FL testified, however, that Meadwell never told her the specifics of the incident that he allegedly observed and that she discounted his claims anyway because he was a drunk. FL claimed that when she questioned JL, he could not recall what happened other than that he had thought it was FL who was in the bed with him. FL testified that she questioned CF at the time but she had not indicated that anything inappropriate had happened. According to FL, it was not until after JL was arrested that CF told her that there was improper touching.

[¶ 7] At the conclusion of the hearing, the juvenile court orally ruled that FL and JL had neglected CF and DL. That ruling was memorialized in a written order issued on April 27, 2004. Legal custody of CF and DL was placed with the Department of Family Services. FL retained physical custody of the children subject to the supervision of the agency. FL has appealed the adjudication of neglect.

## STANDARD OF REVIEW

[¶ 8] The main thrust of FL's argument on appeal is a challenge of the sufficiency of the evidence supporting the juvenile court's decision.

When reviewing a record for sufficient evidence to sustain a finding of neglect, we:

1. Give considerable deference to the trial court's determination because it has the advantage to judge the demeanor and intelligence of the witnesses;

subdural hematoma, substantial malnutrition or skin bruising if greater in magnitude than minor bruising associated with reasonable corporeal punishment;
(III) "Substantial risk" means a strong possibility as contrasted with a remote or insignificant possibility;

2. Examine the evidence in the light most favorable to appellee and resolve all conflicts in evidence for appellee;

3. Assume as true the evidence in appellee's favor, disregard entirely appellant's evidence in conflict with appellee's evidence, and give to appellee's evidence every favorable inference that may fairly be drawn.

*DH v. Dep't of Family Servs. (In re "H" Children)*, 2003 WY 155, ¶ 54, 79 P.3d 997, ¶ 54 (Wyo.2003) (quoting *MP v. State In Interest of CP*, 965 P.2d 1155, 1157 (Wyo. 1998)).

*In re HP*, 2004 WY 82, ¶ 17, 93 P.3d 982, ¶ 17 (Wyo.2004).

## DISCUSSION

[¶ 9] Carbon County DFS urges us to dismiss FL's appeal arguing that her brief fails to comply with the procedural provisions of W.R.A.P. 7.01 and W.R.C.P. 5 and contains no cogent argument or citation to pertinent authority.

[¶ 10] While we will make allowances for *pro se* litigants, they are not excused from compliance with our rules. *Kelley v. Watson*, 2003 WY 127, ¶ 4, 77 P.3d 691, ¶ 4 (Wyo.2003); *Hamburg v. Heilbrun*, 891 P.2d 85, 87 (Wyo.1995). Dismissal is one of the sanctions we may impose upon an offending party if we deem it appropriate. W.R.A.P. 1.03. We decline to do so here. FL's brief is sufficient for us to discern a substantive argument challenging the sufficiency of the evidence to support the court's determination of neglect. Where we have been able to identify the nature of the issue raised by a *pro se* appeal and the legal parameters of its resolution, we have been willing to consider the merits of the appeal rather than impose sanctions for the technical violations of our rules. *Young v. State*, 2002 WY 68, ¶ 9, 46 P.3d 295, ¶ 9 (Wyo.2002).

(IV) "Imminent danger" includes threatened harm and means a statement, overt act, condition or status which represents an immediate and substantial risk of sexual abuse or physical or mental injury.

We will address the merits of FL's argument.

■ [¶ 11] FL insists that the State did not show "beyond a preponderance of the evidence that I did not proceed as a reasonable person would" have. FL contends that both CF and JL denied that anything happened and that neither had any incentive to lie. She claims that Meadwell is a drunk and not a credible witness. FL points out that when one of her older sons from a prior marriage was caught inappropriately touching CF, she notified DFS of the incident and arranged it so her son would not be left alone with CF until he could be sent to live with his father.[2] FL cites her response to that incident as evidence that she knew how to protect her daughter and implied that she would have done the same if she believed that JL had posed a threat to CF. Finally, FL argues that there was no evidence that DL was neglected as he was not a witness to the alleged incident or the recipient of any impropriety.

■ [¶ 12] The weight to be given a witness' testimony and his credibility are for the trier of fact to determine, not this Court. We will not substitute our judgment for that of the trial court with respect to issues of credibility. *Wallop v. Wallop*, 2004 WY 46, ¶ 10, 88 P.3d 1022, ¶ 10 (Wyo.2004); *Rutar Farms & Livestock, Inc. v. Fuss*, 651 P.2d 1129, 1133 (Wyo.1982). The court had the opportunity to observe Meadwell and FL on the stand as it listened to their testimony. There is nothing in the record that would persuade us that the court's conclusion that Meadwell presented a more credible witness of the events at issue than FL was in error. We decline FL's invitation to reweigh the evidence and disturb the juvenile court's judgment on witness credibility.

[¶ 13] Considering Meadwell's testimony, there is clearly sufficient evidence that FL neglected CF. A neglected child is one "[w]ho has been abused by the inflicting or causing of physical or mental injury, [or] harm . . . other than by accidental means, including

. . . allowing the commission of a sexual offense against a child as defined by law[.]" Wyo. Stat. Ann. § 14–3–402(a)(xii)(B). As set forth above, the facts do not support FL's claim to have behaved in a reasonable manner. Despite knowledge of JL's "inappropriate thoughts" regarding her daughter, FL took no action restricting JL's unsupervised access to her. A reasonable person would have taken JL's declaration that his improper thoughts about CF had "disappeared" with a certain amount of incredulity. At a minimum, such a person would have ensured that CF would not have any unsupervised contact with JL. FL's failure to act and take even basic precautions to protect CF allowed JL to act on his "inappropriate thoughts" and sexually abuse her.

[¶ 14] Furthermore, even after being confronted with an accusation by an eyewitness that JL was abusing CF, FL continued to do nothing to guarantee protection for her daughter. CF was still residing in the same household with her abuser a month after the incident. FL's continuing failure to take appropriate protective action placed her daughter in "imminent danger and substantial risk" of being abused again and constituted neglect on her part. Wyo. Stat. Ann. § 14–3–402(a)(xii)(B) and (a)(xii)(B)(IV). There was sufficient evidence to support the court's adjudication of FL's neglect of CF.

■ [¶ 15] The record also contains sufficient evidence to support the neglect adjudication regarding DL. DL was not sexually abused. He was, however, present in the home at the time his sister was being abused. An adjudication of neglect does not require actual harm to the child: Neglect may be predicated on "imminent danger to the physical or mental health or welfare of the child[.]" Wyo. Stat. Ann. § 14–3–402(a)(xii)(B). It is not conducive to the welfare of a child to reside in a household where there is ongoing sexual abuse of other children. At a minimum, there was a substantial risk that DL would be exposed to the abuse of his sister. We have little trouble

---

**2.** FL related this incident in her testimony at the adjudication hearing. The incident occurred sometime in 2002.

under the circumstances upholding the district court's finding of neglect regarding DL.

[¶ 16] As a final matter, FL complains that the police were allowed to supplement their reports and that she did not receive this material during discovery. The supplemental material allegedly included statements from a doctor that contradicted claims that CF had been abused. FL contends that withholding this evidence was prejudicial to her.

[¶ 17] It is the appealing party's burden to present a record sufficient for us to review. *In re Estate of George,* 2003 WY 129, ¶ 11, 77 P.3d 1219, ¶ 11 (Wyo.2003). The record before us does not contain the police reports, the court's discovery orders or rulings, or any other material indicating that the matter was even presented for the district court's consideration. Without a proper record, there is simply no basis upon which we can review FL's claim.

## CONCLUSION

[¶ 18] The district court's adjudications of neglect by FL of her children, CF and DL, are supported by substantial evidence. Affirmed.