2011 WY 128

**In The Interest of DRS, NJL, and KDL, Minor Children.**

**RH, Appellant (Respondent),**

v.

**The State of Wyoming, Department of Family Services, Appellee (Petitioner).**

No. S–11–0017.

Supreme Court of Wyoming.

Sept. 14, 2011.

Representing Appellant: John M. Burman, Faculty Supervisor, U.W. Legal Services Program; Tracy Racicot, Student Director; and Liz Minnerop, Student Intern. Argument by Ms. Minnerop.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Robin Ses-
sions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; and Susan K. Stipe, Senior Assistant Attorney General. Argument by Ms. Stipe.

Representing Guardian ad Litem: Roxie L. Hensley, Hensley Law, Laramie, WY.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1]   RH (Mother) challenges the district court's order directing that her minor children be placed with their grandparents and father, respectively, rather than returned to her custody. We affirm the juvenile court.

## ISSUES

[¶ 2]   Mother raises three issues before this Court:

1. Whether the district court committed reversible error when it ordered, without notice to [Mother] and without conducting any evidentiary hearing, that KL and NL remain with their grandparents and not be reunited with [Mother] as had been stipulated; and DS be placed with her father without [Mother's] consent.

2. Whether the district court erred by applying Wyoming Statute § 14–3–429(a)(iv) or stated inversely, whether the district court erred by failing to apply Wyoming Statute § 14–3–405 in deciding the State's motion to change custody and placement of the minor children after conducting an evidentiary hearing.

3. Whether the district court's findings of fact were supported in relevant part by "clear and convincing evidence" as required by Wyoming Statute § 14–3–429(a)(iv).

## FACTS

[¶ 3]   Mother has three minor children, DS (age 9), NL (age 6), and KL (age 5), who are the subject of a neglect petition that began this case.[1] MS is the father of DS, while CL is the father of NL and KL.

---

1. Mother also has an infant son who was born   after this case began.

[¶ 4]   On October 24, 2008, the three minor children were removed from their home and Mother's care after authorities observed a number of safety and sanitation concerns in Mother's home while executing a search warrant.[2]   On October 28, 2008, the Albany County Attorney's Office filed a neglect petition.   Part of the neglect petition indicated that the children were to be returned to their home after the identified issues had been corrected.   The same day the neglect petition was filed, the children were returned to their home.

[¶ 5]   On January 16, 2009, based upon the agreement of all parties to the matter, the juvenile court entered a consent decree, which included an admission to the allegations of neglect.   Furthermore, the decree placed the children in the custody of Mother, under the protective supervision of the Department of Family Services (DFS).   A multidisciplinary team (MDT) was also established in order to provide recommendations to the juvenile court.   The MDT also recognized terms and conditions that Mother was to meet and also established that the consent decree would be in effect for twelve months unless Mother failed to meet the terms and conditions, in which case the State would file a motion to reinstate the juvenile action. The juvenile court also entered an order accepting Mother's admission of neglect, but holding the adjudication of neglect in abeyance pursuant to the terms of the consent decree.

[¶ 6]   Occasion to revisit the neglect petition occurred May 14, 2009, when the State moved to reinstate the proceedings alleging that Mother was interfering with CL's visitation with NL and KL, that Mother had failed to consistently keep her pet snake locked up, that Mother failed to have the children's babysitters approved by DFS, and that Mother failed to obtain a substance abuse evaluation.   An amended motion to reinstate was filed on May 27, 2009, containing a second allegation of an unapproved babysitter. The juvenile court reinstated the proceedings on June 9, 2009, and found that Mother

violated the terms of the consent decree. Juvenile proceedings were reinstated, and the children were adjudicated to be neglected after the admission of the neglect was entered.

[¶ 7]   Mother retained custody of her children throughout the proceedings while under the protective supervision of DFS. The order reinstating the proceedings authorized DFS to remove the children from Mother's custody without a subsequent order from the juvenile court.   On September 8, 2009, the court set forth a permanency plan of family preservation and ordered Mother to comply with eighteen terms and conditions to reach that goal.

[¶ 8]   Until June of 2010, the children continued to live with Mother.   Issues continued to prevail, however, concerning Mother's compliance with the orders of the juvenile court and concerning the welfare of the children.   The MDT filed a report indicating its concerns regarding Mother's and CL's ability to co-parent NL and KL. DFS also filed a quarterly progress report in May and indicated ongoing concerns about the health and welfare of the minor children.   Based upon these concerns, the parties met with the children's therapist, and all agreed that it was in the best interests of NL and KL to have extended visitation with their grandparents and for DS to continue her summer visitation with her father, MS.

[¶ 9]   On July 15, 2010, the MDT met and decided to recommend that the children continue with their grandparent visitation (for KL and NL), and that DS should be temporarily placed with her father.   Pursuant to that, the State filed a motion to change custody and placement of the minor children on July 16, 2010, and requested that grandparent visitation be continued for NL and KL and that DS continue visitation with her father.   Also on July 16, 2010, the juvenile court held an already scheduled review hearing on the matter, and after hearing recommendations from the MDT members, found it was in the best interests of the children to be

---

**2.**   While executing the warrant, detectives found dried and rotting food, feces, trash, cigarette butts, drug paraphernalia and marijuana, a loose boa constrictor, and damages to the walls and a light fixture.

continued to be placed away from Mother until the September hearing.

[¶ 10] The juvenile court held a hearing on September 29–30, 2010, on the State's motion to change custody. After hearing from both sides, and after both sides were presented an opportunity to present evidence to the juvenile court, it ruled that the minor children should not be returned to Mother at that time, and that they should remain with their grandparents in the case of NL and KL, and DS should continue to reside with her father. Mother timely appealed.

## DISCUSSION

[¶ 11] As a preliminary issue, we must first address an issue brought up by the State—that the juvenile court's hearing on July 16, 2010, is not properly before this Court on appeal. Just prior to the July 16th hearing, the State filed a motion to change custody and placement of the minor children and served the motion on Mother. The review hearing went forward, but no evidence was heard concerning the motion to change custody and placement. After the hearing, the court determined that the children should not be returned to Mother, but instead NL and KL would be placed with their grandparents, and DS would be placed with her father until a full evidentiary hearing could be held on the State's motion.

[¶ 12] In her brief, Mother states that the issues from the July 16, 2010, hearing are "merged into the final judgment." However, the State takes issue with that statement, and contends that the matters addressed in the juvenile court's order on review hearing are not properly before this Court, because no appeal was taken from that order. However, when Mother filed a petition for writ of review in August of 2010, she did seek interlocutory review of the July 16, 2010, hearing's order, where the juvenile court determined that the children at issue in this case should be placed outside of her home.[3]

[¶ 13] The juvenile court made the following findings as a result of the July 16, 2010, review hearing:

1. This matter last came before the Court on the 17th day of August, 2009, for a Final Disposition Hearing, at which time physical and legal custody of the minor children was placed with the mother of the minor children, [Mother];

2. That this is not an Evidentiary Hearing, it is a Review Hearing;

3. The Court's record shows a history of disagreement between [Mother] and [CL] and its effects on the stability of the minor children. The Court recognizes that the minor children have been subjected to severe emotional abuse and that the "Time Out" visitation, per the *Stipulation for Visitation with Grandparents,* filed the 21st day of June, 2010, has been successful in providing stabilization for the minor children, [NL] and [KL];

4. That [NL] and [KL] are currently placed with their grandparents pursuant to the *Stipulation for Visitation with Grandparents* filed on the 21st day of June and approved by the Court's *Order Granting Stipulation for Visitation with Grandparents* entered June 21, 2010. That said stipulation included an agreement that it was in the best interests of the minor children, [NL] and [KL], that they visit their grandparents, from June 19, 2010 until July 18, 2010;

5. That [DS] is currently staying with [Mother], having returned from her father's home about one (1) week ago;

6. That because of the emotional stress on the minor children, it is contrary to the best interest of the minor children to remain in their mother's home, at the present time, until the hearing on the State's *Motion to Change Custody and Placement of the Minor Children,* filed July 16, 2010, may be held;

7. That it is in the minor children's, [NL] and [KL], best interest [that] visitation shall continue with their paternal grandparents ..., with respite by maternal grandparents ..., until the hearing on the State's *Motion to Change Custody and Placement of the Minor Children* ;

3. This Court denied Mother's petition for writ of review on the merits after careful review of the petition for writ of review, the response, and the file.

8. That it is in the best interest of [DS] that she be placed with her father [MS] for an extended visit after remaining with [Mother] for one week from July 16, 2010.

[¶ 14] The State concedes that because this order affected a substantial right of Mother (i.e., the order addressed the children's placement), it is an appealable order. We agree. However, we disagree with the State's point that Mother is barred from appealing this particular order in accordance with W.R.A.P. 1.03, which states that "[t]he timely filing of a notice of appeal, which complies with Rule 2.07(a), is jurisdictional." Accordingly, we will proceed to address Mother's first issue, regarding the July 16, 2010, hearing, on the merits.

■ [¶ 15] Mother contends that the juvenile court's order after the July 16, 2010, hearing should be reversed because the court violated her due process rights by not giving her opportunity to present evidence prior to making its ruling. Mother also argues that the court applied the wrong statute at the review hearing, and finally, that these issues are not moot. Mother's basic complaint is that her children were removed from her home without an evidentiary hearing.

■ [¶ 16] This Court has previously considered a juvenile court's decision made during a review hearing. *In re HP*, 2004 WY 82, ¶¶ 24–25, 93 P.3d 982, 989–990 (Wyo. 2004). First, we note that we review a court's findings in the context of a review hearing in a neglect proceeding under a preponderance of the evidence standard. In addressing the findings made at the review hearing, this Court pointed out that, according to statute,

[T]he juvenile court is charged with conducting:

a review hearing six (6) months from the date of the child's removal from the home, twelve (12) months from the date of the child's removal from the home, and not less than once every twelve (12) months thereafter. At each of these review hearings the court shall review the case plan to determine:

(i) The health and safety of the child;

(ii) The continuing necessity for the placement;

(iii) The appropriateness of the current placement;

(iv) The reasonableness of efforts made to reunify the family and the consistency of those efforts with the case plan;

(v) The appropriateness of the case plan and the extent of compliance with the case plan including the permanent placement of the child;

(vi) If progress has been made toward alleviating or mitigating the causes necessitating placement outside the home and the extent of that progress; and

(vii) The date the child is expected to be returned to the home or placed for adoption or legal guardianship.

*HP*, ¶ 24, 93 P.3d at 989.

[¶ 17] We went on to say that:

... Wyo. Stat. Ann. 14–3–424(a) provides that hearings under the Child Protection Act are to be conducted in "an *informal* but orderly manner and separate from other proceedings not included under this act." (Emphasis added). Thus, the formalities of the proceedings themselves and the notice and opportunity to be heard provided in a neglect proceeding are not the same as that in a termination proceeding. Accordingly, we review the court's findings only in the context of a review hearing in a neglect proceeding and under the preponderance of the evidence standard that is applicable to neglect proceedings. *See* Wyo. Stat. Ann. § 14–3–425; *In re "H" Children*, ¶ 39; *but see* Wyo. Stat. Ann. § 14–3–429(a)(iv) where clear and convincing evidence is required to show that reasonable efforts were made to prevent the initial removal from the home. Although the juvenile court's findings in this case may be similar to several of the findings required in order to terminate parental rights, they must be fully litigated in a termination proceeding under the applicable clear and convincing standard.

See *In re "H" Children,* ¶ 39; Wyo. Stat. Ann. § 14–2–309(a)(iii).

*HP,* ¶ 25, 93 P.3d at 990 (footnotes omitted).

[¶ 18] At any time prior to disposition under § 14–3–429, the juvenile court, on motion of any party, may reconsider its order regarding shelter care or conditions of release made under § 14–3–409 or 414. "Certainly, that is some notice to the parent that issues involving the conditions of shelter care may arise at any time." *DH v. Wyo. Dep't of Family Servs. (In re "H" Children),* ¶ 42, 2003 WY 155, 79 P.3d 997, 1009 (Wyo.2003). For Mother, there was notice and a meaningful opportunity to be heard at the review hearing. Here, a certain measure of notice that future hearings would occur regarding placement of the children was provided when the children were adjudicated as neglected. Furthermore, the temporary nature of the juvenile court's order and the subsequent evidentiary hearing, where Mother did produce evidence, served to eliminate any prejudice claimed by Mother. Therefore, we find no abuse of discretion in the juvenile court's order temporarily maintaining the placement of the children with their grandparents and father, respectively.[4]

█ [¶ 19] In her second issue, Mother asks this Court to determine if the juvenile court erred by applying § 14–3–429(a)(iv) or failing to apply § 14–3–405 in deciding the State's motion to change custody and placement of the minor children after conducting an evidentiary hearing.

█ [¶ 20] Questions of law are reviewed *de novo. DOT v. Robbins,* 2008 WY 148, ¶ 7, 197 P.3d 1243, 1245 (Wyo.2008). This issue also involves statutory interpretation. Our rules of statutory construction are well known:

This court interprets statutes by giving effect to the legislature's intent.... We begin by making an inquiry relating to the ordinary and obvious meaning of the words employed according to their arrangement and connection.... We give effect to every word, clause, and sentence and construe together all components of a statute in *pari materia* .... Statutory interpretation is a question of law.... We review questions of law de novo without affording deference to the district court's decision. *Worcester v. State,* 2001 WY 82, ¶ 13, 30 P.3d 47, 52 (Wyo.2001). If a statute is clear and unambiguous, we simply give effect to its plain meaning. *Wesaw v. Quality Maintenance,* 2001 WY 17, ¶ 13, 19 P.3d 500, 506 (Wyo.2001) (quoting *In re Claim of Prasad,* 11 P.3d 344, 347 (Wyo. 2000)). Only when we find a statute to be ambiguous do we resort to the general principles of statutory construction. *Wesaw,* 2001 WY 17, ¶ 13, 19 P.3d at 506 (quoting *In re Claim of Prasad,* 11 P.3d at 347). An ambiguous statute is one whose meaning is uncertain because it is susceptible to more than one interpretation. *Pierson v. State,* 956 P.2d 1119,1125 (Wyo.1998) (quoting *Amrein v. State,* 836 P.2d 862, 864–65 (Wyo.1992)).

It is a basic rule of statutory construction that courts may try to determine legislative intent by considering the type of statute being interpreted and what the legislature intended by the language used, viewed in light of the objects and purposes to be accomplished....

We are guided by the full text of the statute, paying attention to its internal structure and the functional relation between the parts and the whole. *In re Worker's Compensation Claim of Johnson,* 2001 WY 48, ¶ 8, 23 P.3d 32, 35 (Wyo.2001) (quoting *In re Hernandez,* 8 P.3d 318, 321 (Wyo.2000) and *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040,1045 (Wyo.1993)). Each word of a statute is to be afforded meaning, with none ren-

---

**4.** Although DS was technically visiting Mother during the July 16, 2010, hearing, the juvenile court's decision to place her with her father on "extended visitation" was appropriate under the court's purview. The juvenile court is required at a review hearing to determine, among other things, health and safety of the child, the continuing necessity for placement and the appropriateness of current placement according to Wyo. Stat. Ann. § 14–3–431(c)(i)–(iii) (2011). This is always an option of the juvenile court when a child is adjudicated to be neglected. Accordingly, the decision of the juvenile court to place DS with her father was not against any legal standard.

dered superfluous. *Jessen v. Burry*, 13 P.3d 1118, 1120 (Wyo.2000). Further, the meaning afforded to a word should be that word's standard popular meaning unless another meaning is clearly intended. *Soles v. State*, 809 P.2d 772, 773 (Wyo.1991). If the meaning of a word is unclear, it should be afforded the meaning that best accomplishes the statute's purpose. *Radalj v. Union Savings & Loan Ass'n*, 59 Wyo. 140, 138 P.2d 984, 996 (1943).

*Union Pac. Res. Co. v. Dolenc*, 2004 WY 36, ¶ 13, 86 P.3d 1287, 1291–92 (Wyo.2004) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶¶ 9–10, 50 P.3d 323, 326–27 (Wyo.2002)).

*LM v. Laramie County Dep't of Family Servs. (In re MN)*, 2007 WY 189, ¶ 4, 171 P.3d 1077, 1079–80 (Wyo.2007).

[¶ 21] We first turn to the statutes at issue. Wyo. Stat. Ann. § 14–3–429(a)(iv) (LexisNexis 2011) states:

**§ 14–3–429. Decree where child adjudged neglected; dispositions; terms and conditions; legal custody.** (a) In determining the disposition to be made under this act in regard to any child:

. . . .

(iv) When a child is adjudged to be neglected the court shall ensure that reasonable efforts were made by the department of family services to prevent or eliminate the need for removal of the child from the child's home or to make it possible for the child to return to the child's home. Before placing a child outside of the home, the court shall find by clear and convincing evidence that to return the child to the child's home would not be in the best interest of the child despite efforts that have been made;

[¶ 22] In comparison, Wyo. Stat. Ann. § 14–3–405 (LexisNexis 2011) states:

**§ 14–3–405. Taking of child into custody; when permitted.**

(a) A child may be taken into custody by a law enforcement officer without a warrant or court order and without the consent of the parents, guardians or others exercising temporary or permanent control over the child when:

(i) There are reasonable grounds to believe a child is abandoned, lost, suffering from illness or injury or seriously endangered by his surroundings and immediate custody appears to be necessary for his protection; or

(ii) The child's conduct or behavior seriously endangers himself and immediate custody appears necessary.

(b) A child may be taken into temporary protective custody by a physician, physician's assistant or nurse practitioner without a warrant or court order and without the consent of the parents, guardians or others exercising temporary or permanent control over the child when the physician, physician's assistant or nurse practitioner treating the child, or a hospital in which the child is being treated, finds that there is reasonable cause to believe an imminent danger to the child's life, health or safety exists unless the child is taken into protective custody, whether or not additional medical treatment is required, and there is not time to apply for a court order.

(c) A district attorney may file an emergency petition, or the department of family services, a local law enforcement officer, an administrator of a hospital in which a child reasonably believed to have been abused or neglected is being treated, or any physician, physician's assistant or nurse practitioner who treated the child may request the court for a protective order. After considering the emergency petition or request, the judge or commissioner, upon finding that there is reasonable cause to believe that a child has been abused or neglected and that the child, by continuing in his place of residence or in the care and custody of the person responsible for his health, safety and welfare, would be in imminent danger of his life, health or safety, may:

(i) Issue an ex parte order or search warrant. The order shall place the child in the temporary protective custody of the local child protection agency;

(ii) Issue an emergency order or search warrant upon application and

hearing, authorizing ordinary or emergency care of the child or authorizing a forensic examination to collect evidence.

(d) Temporary protective custody shall not exceed forty-eight (48) hours, excluding weekends and legal holidays.

(e) When necessary for the best interest or welfare of the child in temporary protective custody, a court may order medical or other necessary health care, including mental health and substance abuse care, notwithstanding the absence of a prior finding of child abuse or neglect.

[¶ 23] Here, Mother contends that the court applied the wrong statute in the September 29–30, 2010, evidentiary hearing. The court applied § 14–3–429(a)(iv), which relates to disposition determinations. However, Mother argues that the court should have applied the temporary custody statute, § 14–3–405, because it provides a higher imminent danger standard for removal of children from the home.

[¶ 24] The plain language of § 14–3–405 references the appropriate standard for taking a juvenile into temporary custody prior to any action by the juvenile court. Law enforcement, a physician (and others), or the filing of an emergency petition by the district attorney for temporary custody not to exceed 48 hours are methods listed in the statute. The statute also addresses an emergency situation wherein access to the court may be limited, and the duration of the emergency custody taken is temporary and brief before due process is afforded.

[¶ 25] Wyo. Stat. Ann. §§ 14–3–401 through 14–3–440 (LexisNexis 2011) provide a procedural chronology for actions brought under the Child Protection Act. The procedures outlined in the Act include: (1) temporary protective custody (14–3–405); (2) shelter care hearing (14–3–409); (3) the filing of the petition (14–3–412); (4) initial appearance advisements (14–3–422); and (5) adjudicatory hearing (14–3–426). At § 14–3–429, the Act addresses what occurs following an adjudication of neglect or abuse, and outlines the requirements for a disposition hearing, including requiring a determination of the placement of a child found to be abused or neglected.

[¶ 26] Although § 14–3–405 clearly references an emergency situation where there is no opportunity for a hearing, the juvenile court here was not holding an emergency temporary protective custody hearing on September 29–30, 2010. Rather, the court held a scheduled hearing, on motion, reviewing the children's placement needs over the course of two days. The September 29–30 hearing on the State's motion to change custody and placement of the minor children was used to determine what custody and placement would be in the best interests of the children, supporting the use of § 14–3–429.

[¶ 27] The required findings contained in § 14–3–429 have more applicability when the parent has already been adjudicated as neglectful, as is the case here. Without adjudication of neglect, a parent's fundamental right to associate with his or her children is implicated. *Hall v. Hall,* 708 P.2d 416, 421 (Wyo.1985). The best interests of children have "constitutional preeminence," and where there has been an adjudication of neglect or abuse, this "preeminence" elevates the children's best interest above the parent's rights. *KO v. LDH (In re MEO),* 2006 WY 87, ¶ 53, 138 P.3d 1145, 1160 (Wyo.2006) (citing *In Interest of MKM,* 792 P.2d 1369, 1375 (Wyo.1990)). The requirement found in § 14–3–405(c) of imminent danger to a child before taking custody gives credence to the concept that children should not be removed unless circumstances exist that would place the child's health and safety at risk. Section 14–3–429(a)(iv) shifts the focus from imminent danger to the children to an inquiry of what would be in the best interests of the children, all because the application of this statute necessarily occurs after an adjudication of neglect or abuse.

[¶ 28] The juvenile court reasoned in its decision that the plain language of § 14–3–429(a)(iv) provides that it is to be used after an adjudication of neglect; that this statute incorporates the best interests of the child which are now of "constitutional preeminence." The alternative statute proposed by Mother, § 14–3–405(c), demonstrates through its plain language that it applies to

emergency situations; and the relief provided in § 14-3-405(c) includes ex parte relief, an emergency order, or a search warrant, none of which is alleged as necessary in light of the two-day evidentiary hearing held in this case.

[¶ 29] The juvenile court's conclusions of law were decided under the correct statute. Section 14-3-429(a)(iv) provided the correct framework for the court, as it designates the structure for disposition of children who are adjudicated as neglected.

[¶ 30] Moving to the third and final issue on appeal, Mother asserts that there was insufficient evidence for the juvenile court to determine, by clear and convincing evidence, that placement of the children should be with relatives rather than with Mother.

[¶ 31] As we stated in *HP*, ¶ 17, 93 P.3d at 987:

> When reviewing a record for sufficient evidence to sustain a finding of neglect, we:
>
> 1. Give considerable deference to the trial court's determination because it has the advantage to judge the demeanor and intelligence of the witnesses;
>
> 2. Examine the evidence in the light most favorable to appellee and resolve all conflicts in evidence for appellee;
>
> 3. Assume as true the evidence in appellee's favor, disregard entirely appellant's evidence in conflict with appellee's evidence, and give to appellee's evidence every favorable inference that may fairly be drawn.

*DH v. Dep't of Family Servs. (In re "H" Children)*, 2003 WY 155, ¶ 54, 79 P.3d 997, ¶ 54 (Wyo.2003) (quoting *MP v. State in Interest of CP*, 965 P.2d 1155, 1157 (Wyo. 1998)).

Also, § 14-3-429(a)(iv) states that clear and convincing evidence is required to show that reasonable efforts were made to prevent the initial removal from the home.

[¶ 32] Here, the issue is whether the juvenile court had sufficient evidence to find that DFS made reasonable efforts to prevent removal of the children from Mother's home, and that the best interests of the children would not be served by allowing them to remain in the home.

[¶ 33] Reasonable efforts are determined on a case-by-case basis. *See HP*, ¶ 26, 93 P.3d at 990 (reasonable efforts sufficient where six MDT meetings were held at which mother was encouraged to complete her case plan, four case plans entered, children allowed to live with mother after release from prison, DFS offered transportation to visitation, DFS recommended counseling services, and assisted mother in procuring suitable housing); *SD v. Carbon County Dep't of Family Servs. (In re SED)*, 2002 WY 168, ¶¶ 16-23, 57 P.3d 1235, 1239-41 (Wyo.2002) (reasonable efforts demonstrated by community-wide approach to assisting parents to learn how to properly care for an infant by DFS attempts to make requirements of case plan clear and understandable to parents and by providing psychological evaluations to assist in determining how to teach parents).

[¶ 34] Here, we note that the juvenile court held a two-day evidentiary hearing where, after hearing numerous witnesses testify, it issued detailed findings of fact and conclusions of law. Mother's arguments were not only heard but she was also given the opportunity to dispute the State's evidence. The juvenile court made 72 findings of fact to support its conclusions that both elements of § 14-3-429(a)(iv) were met. Significantly, the juvenile court's order notes the following efforts made by DFS to preserve and reunify the family:

> 55. The Court finds that the following reasonable efforts were made by DFS to prevent or eliminate the need for removal of the minor children from [Mother]'s home:
>
> a. When the minor children were first taken into protective custody, DFS directed and informed [Mother] regarding what she needed to do so that her home would be safe and clean in order to have the children released from DFS' protective custody and returned to [Mother]'s home. DFS oversaw the repairs made to [Mother]'s home, including filling the holes in the walls, repairing loose wiring, covering electrical outlets, caging the pet boa constrictor snake, and general cleanup/disinfection.

(*See also* Order on Initial Appearance and Shelter Care Hearing [sic] 2. [Mother] completed these repairs in just a couple of days and DFS then returned the minor children to [Mother].)

b. DFS contacted [Mother's] mortgage company and convinced them to allow her more time to become current with her mortgage payments.

c. DFS put [Mother] in contact with a loan modification company in an attempt to keep from losing her home to foreclosure. [Mother] completed some initial paperwork, but did not follow through. [Mother] thereafter lost her home to foreclosure.

d. After receiving notice that [Mother] had to leave her home within 30 days, [a DFS caseworker] convinced that same mortgage company to give her $1,000.00 as start-up money for a new apartment.

e. DFS then helped [Mother] find a new apartment that would accommodate her and the minor children.

f. DFS also contacted Interfaith and the organization paid [Mother]'s rent on three occasions. Interfaith also paid her utilities on several occasions at [a DFS caseworker's] request.

g. DFS facilitated and Medicaid paid for [Mother's] court-ordered Substance Abuse Evaluation.

h. DFS facilitated and Medicaid paid for the court-ordered Psychological Evaluation for [Mother].

i. DFS facilitated and Medicaid paid for solo and joint counseling for [Mother], which included parenting education and co-parenting counseling.

j. In early 2009, [Mother] was not complying with the Consent Decree. (See Motion to Reinstate Proceedings [sic] 2.) DFS met with [Mother] to counsel her on how to comply with the Consent Decree in an effort to avoid adjudication in the court system. [Mother] did not comply with the Consent Decree, despite DFS's efforts, and the children were adjudicated as neglected. (Order on State's Amended Mot. To Reinstate and [CL] Mot. For Order to Show Cause 2–3.)

k. DFS facilitated and Medicaid paid for counseling for [NL] and [KL] with [a counselor]. [A DFS caseworker] asked [a counselor] to provide the counseling despite her busy schedule and [a counselor] agreed.

l. [Mother] was arrested on a warrant and taken to the Albany County Detention Center. DFS ensured that the children were cared for overnight until [Mother] was released the next day.

m. DFS worked with [Mother] to ensure that she completed her court-ordered urinalysis requirements, including calling her phone, visiting her home, and contacting her attorneys.

n. DFS facilitated and supervised visits between [CL] and [NL] and [KL] to ensure the children's safety and determine [CL]'s parenting skills and ability.

o. DFS ensured that the children were cared for during the birth of [Mother's] youngest child in March 2010.

p. DFS provided [Mother] with financial aid including food stamps and Medicaid.

q. DFS set up numerous case plans for [Mother] to help her provide a safe home for her children and remove herself from DFS' oversight.

r. DFS has facilitated at least four MDT meetings in an attempt to ensure that [Mother] cooperates with [the] Court's orders and DFS' case plans.

s. Since the minor children went on their "Vacation Visitation" in Rock Springs, [Mother] has not visited them in person as much as possible due to her limited resources. DFS counseled [Mother] and her attorneys that Interfaith was willing to fill her gas tank in Laramie and then she could receive a voucher in Rock Springs that would allow her to fill her gas tank to return to Laramie. However, DFS itself does not have a fund to provide this sort of assistance for children who are not in DFS' custody.

[¶ 35] After carefully considering two full days of evidence before it, the juvenile court concluded that the statutory requirements were met for the children to be placed out-

side of Mother's home. This Court, having examined the evidence in the light most favorable to the State, upholds the juvenile court's decision.

[¶ 36] In reaching our decision, we point to the following support. The juvenile court heard evidence that Mother was using DS to coach her younger siblings, NL and KL, that their father, CL, molested them, an allegation that is otherwise wholly unsupported. NL and KL repeatedly alleged that their father was sexually molesting them. However, no counselor involved in the case could substantiate any sexual abuse ever occurring. To the contrary, NL's and KL's counselor specifically testified that she did not believe the children were molested at any time. Instead, Mother was coaching the children to assert that they had been molested by their father, despite the fact that the counselor and DFS instructed Mother that this activity was contrary to the welfare of her children.[5] As to each of the minor children, the juvenile court heard evidence from two counselors that "coaching" on the part of the parent is considered severe emotional abuse from which the children may not be able to recover.

[¶ 37] As the coaching would suggest, Mother and CL had extremely negative interactions with each other. Even though this was damaging to her children, Mother persisted in this behavior. In fact, specialized counseling was also provided to encourage co-parenting. Counselors testified that negative co-parenting is harmful to children because it undermines the relationship the children have with the other parent.

[¶ 38] Two full days of testimony took place in this case. After examining the evidence in the light most favorable to the State, we uphold the juvenile court's findings that the statutory requirements for out of home placement were met.

## CONCLUSION

[¶ 39] This Court upholds the juvenile court's findings of fact, conclusions of law

---

5. The Laramie Police Department also investigated the allegations of sexual abuse and found no

and order entered on October 22, 2010, directing Mother's minor children to be placed with their grandparents and father, respectively, rather than returned to her custody.

evidence of impropriety.